Our fifth and final case on the call for today, Tuesday, September 11, 2012, is agenda number five. Case number 112467, People v. Rivera. Counsel for the appellant. Thank you, Your Honor. May it please the Court. My name is Peter Fisher. I'm an assistant state's attorney on behalf of the people. We're here today, Your Honors, because the appellate court found that the admission into evidence of several statements made by the defendant, two in particular, violated Rule 402. And even though the defendant did not object at trial, even though it's not part of the post-trial motion, that this admission into evidence was plain error under the second prong of the plain error rule. This case bears striking resemblance to both Thompson and Glasper, which this Court decided in the last several years, delineating what is necessary for a second prong plain error attack and indicating in no uncertain terms that a structural error is required. This, of course, is not a structural error in this case. In both Thompson and Glasper, the violation in question was a violation of this Court's rule. That case, it was the violation of what's called the Zare rule, which is on pretrial questioning of a voir dire. That rule at least bears tangential relationship to a constitutional issue, which would be the selection of a fair trial. The rule at issue in this case does not even bear that relationship. The rule at issue in this case is purely a policy-driven rule. Therefore, the rationale and judgment and holding in the two cases of Glasper and Thompson should apply even more strongly in this case than it did in those cases and effectively forecloses the option of second prong plain error in this case. Even more fundamentally, though, there was no error in this case. Rule 402 is a rule by its very language and very purpose, which should relate only to post-charging situations. The rule itself is entitled Pleas of Guilty or Stipulations Sufficient to Convict. The rule starts talking about hearings on pleas of guilty. It continues with a section on admissions to the defendant, the nature of the charge, things along those lines. Then it determines whether the plea is voluntary, determining a factual basis for the plea. Every one of those sections and every subsection within that section relates purely to things happening in court in front of a judge in a formal proceeding after the defendant has been charged. It is only when we get to section D, well, no, actually it's section F, because the D and E are also the transcript section and the plea discussion section are also completely related to court. So when we get to section F, which is entitled Plea Discussions, Plea Agreements, Pleas of Guilty and Admissible Under Certain Circumstances, the language reads, if a plea discussion does not result in the plea of guilty or if a plea of guilty is not accepted or is withdrawn or if a judgment of a plea is guilty reversed, blah, blah, blah, that evidence shall not be admissible against the defendant in any criminal proceeding. Under the normal rules of statutory construction, and that's how we look at rules as well, the term plea discussion has to be taken in context with everything else that's preceded. Everything else in this rule deals with things that happen in court, not with things that happen in a police station. So there's no reason to look at the term plea discussion absent a courtroom setting. So there was no error here. Furthermore, the purpose of the rule or the ostensible purpose of the rule is to promote plea negotiations, plea discussions, promote the free flow of guilty pleas. And we all realize that guilty pleas and plea discussions are the way a large percentage of the cases in our system are disposed. But nothing that happens in the police station is a plea negotiation. Nothing that can happen in the police station is a plea negotiation. No matter what happens, no matter what the sides think they're agreeing to in the police station, you still have to go to court and you still have to follow all the rules of 402. Everything that happened in the police station can be thrown out. If the defendant agrees to a specific amount of years, if the defendant agrees to plead guilty, that doesn't matter because you still have to go to court and handle the case according to Rule 402. And the fact is, as a practical matter, the defendants aren't interested in pleading in the police station. And the police and state attorneys certainly aren't interested in getting a plea. They both know, the police know and the state attorneys know, that there's nothing that they can do in the station that will ensure a guilty plea. They may be able to get a confession from the defendant, get an admission from the defendant, but that's not a guilty plea. Certainly half the parties in this negotiation are not considering this as a plea situation. What was happening in this particular case, in this case what happened was the defendant had been in custody and after the custody had continued for several hours, he had made several statements, exculpatory statements, he had made no admissions, and he turns to the police officer and in his own volition, in his own, without prompting or anything by the police officer, he turns and says, if I can get some guarantees that I won't go to jail, first he wants a glass of water, but he also wants some guarantees that I won't go to jail, you know, what can you do for me? And the police officer says, nothing, nothing, we're not talking about that. Now, at that particular point, the defendant's attorney happens to show up in the station and those discussions are stopped, the defendant's attorney asserts the defendant's rights, the defendant agrees and also asserts his rights and remains silent. There's a later re-initiation and at that re-initiation the state's attorney is there and the defendant again says, if they can guarantee me something along the lines of probation or that I won't go to jail, I'd like to tell you what I did, I'd like to confess. Is that relevant to our analysis that he, the defendant, never really specifically offered to plead guilty, only to confess to the crime? I think it is. I don't know that it should be, but I think it is. Under your Friedman case, there's a two-step analysis as to whether or not he had the subjective belief that he was in plea negotiations and whether those are objectively reasonable. I'm arguing that, in a sense, that Friedman was wrongly decided insofar as it would apply to pre-indictment or pre-charging situations. Friedman itself dealt with a post-charging situation, but I'm saying that the rationale should never have been extended into the police station. So it is relevant along those lines under your Friedman decision. I'm saying it shouldn't be relevant because what was going on was not a plea discussion and these situations do not lead to guilty pleas. There's that wall that comes down when you go to court and you get an attorney and you have a judge there and you get all sorts of more discussions. And what happens in the police station, I've never seen a case where it translates into a guilty plea. The only way this might become relevant is if you have some sort of a reliance situation in which the defendant makes a statement based on a promise or an implied promise by the police that will give you X if you do Y. But in this situation, the police nor the assistant state's attorney led him to believe that they were going to negotiate. Is that right? Right. In fact, they stopped talking. There's no further statements other than those two statements. The statements that were used at trial were I'll confess if you give me probation or I'll confess or I'll tell you what I did if you give me something less than jail time. So the follow-up that happened in some of your other cases, Hill, in those other cases, that never happened here. We stop at that point. There was the one case where former Judge Urso was in the police station and there's a discussion about making a deal. He was a state's attorney, of course, at the time. And then he says, well, you know, we can talk a deal. And then the defendant makes some statements. After the statement, we can talk a deal. Well, that would be an analogy if in this case, after the defendant said I wanted to, you know, I'd like to explore the idea of not going to jail if then some statements were introduced. But you don't need Rule 402 to get there. You can either analyze this in straight, you know, Fourth and Fifth Amendment terms of whether or not this was a voluntary statement or whether a statement had been induced or you can get to contract principles, which some cases have eventually gotten to, which it says if you give up something, then we may force specific performance on the state, which raises other issues about whether you, you know, if he's offering probation on a case that's nonprobationable, how you could even enforce that. You know, it's important also to realize at the time they were talking to him, they had no idea what they were eventually going to charge him with. This man ended up charged with 45 different things over the course, because of the abuse of the two young girls that took place over a long period of time. And none of those charges had been settled on at all at this point. So I don't even know what he would be thinking he would be pleading guilty to. So in the context of this case, if you were still to hold that this rule applies in the pre-charging situation, I would say that even under the Friedman analysis, that his belief was not reasonable in the circumstances of what he was facing. He knew that they were investigating a series of serious crimes and that his belief was not objectionably reasonable that he was actually negotiating a plea at that time. And the police obviously didn't think that they were negotiating a plea. And as I said, the defendant himself brought all this on himself. So our bottom line is essentially that this is not plain error, because plain error under the second prong cannot apply to a situation that is even less egregious than the Glasper-Thompson situation. And even if it did apply here, this isn't even error, because this rule should not be applied in this context in a pre-charging situation. And for the reasons I've expressed in the brief and today on appeal, we'd ask that you affirm, excuse me, reverse the appellate court and remand for further. . . There's three other issues that the appellate court didn't decide, so the case would have to go back to the appellate court for resolution of those issues. Thank you. May it please the court, counsel. Your Honors, in this case . . . I'm sorry. Please state your name for the record. I'm sorry, for the record, Donna Foley on behalf of the defendant. Your Honors, in this case a jury was selected. They come back into the courtroom and the state opens with the amazing information that defendant at the police station tried to broker a deal. And if that's not enough, then the state proceeds to go on and present two witnesses, a state's attorney on felony review and a detective, who go into detail about how the defendant told them that he would confess if he were given probation, he wanted guarantees. And it's not just one sentence, but they go on at some length, and the colloquy is in the briefs, about how the defendant kept asking for guarantees. And then if this isn't enough, the state's attorney in opening, closing, proceeds to comment on how the defendant wanted guarantees to confess and then again in rebuttal argument. Does it make any difference that it appears from what I've read in the briefs that the officers didn't do anything to encourage or to get the defendant to make these statements? He initiated the conversations, is that correct? That's correct, and well, the court, let me say this, the court found that defendant reinitiated after his assertion of rights. With regard to the issue that you just posed, whether it makes any difference, well, it doesn't, because this is not an issue of involuntariness, this is not an issue of coercion. This is an issue of the rudiments of plea discussion coming up at the police station. And by its very definition, there is nothing that would make that involuntary. It's a perfectly voluntary statement. But as Friedman and other cases have pointed out, that doesn't make any difference. It doesn't make any difference at all. And the appellate court, in this case the lower court, found that factually there were rudiments of a plea discussion occurring here, which is that I will confess, I think at one point he says, I'll do the right thing, but I want some guarantees, I want probation. And the court noted that if defendant had just said he would confess, or if defendant had not said, let's put it this way, if defendant had not said that I want guarantees, I want probation, then maybe there wouldn't have been a plea, a quote-unquote a plea discussion. But there was, because defendant was telling what he thought was the prosecutor who was in charge of the case, that he wanted to circumvent, in effect, the proceedings, okay, let's end it, but I want probation, and I'll tell you what happened. And the second prong of Friedman is that the defendant's expectation, subjective expectation was reasonable under the circumstances? That's correct. And defendant, in contrast to what my learned opponent just told the court,  I've never seen plea discussions that went anywhere that started at the police station. That's not the point. The point is that the defendant saw a prosecutor in front of him. He knows, at least he's not an attorney, but a prosecutor is somebody who is going to be prosecuting him. And in fact, there are cases which say that it doesn't even have to be a prosecutor. It can just be an officer. But in this case, we have even more. We have him speaking to a prosecutor. It would be unreasonable to impose an additional burden on a defendant that he would know that, in fact, if I start plea negotiations here, that that doesn't really have any impact for a post-charging situation, or that a felony review assistant is not necessarily going to be the person in charge of my case. But the objective reasonableness, keeping with Justice Garmon's question, under the totality of the circumstances, here the totality of the circumstances are that the defendant has not been charged, right? And apparently no one was exhibiting any interest in negotiating any sort of deal with him. Aren't those the circumstances we're, aren't those the totality of the circumstances we're dealing with? A defendant who isn't charged and no one indicating any interest in negotiate a plea? Is that objectively reasonable under the totality of the circumstances? It is, according to Friedman and a host of other cases, absolutely. That is reasonable under the totality of circumstances for the defendant. And the point, if I may, the point is with the intent behind the 402F protections. It's not, it is in fact to assist in safeguarding the procedures of plea negotiations and to encourage it. But that's not the only reason. The other reason very fundamentally is a fair trial. And I haven't heard any discussion by the state with regard to that. And that is extraordinarily important here. The trial counsel here failed to preserve the 402 violations. That's correct. And I don't understand why that wasn't raised as an issue as an effective assistance of counsel. I'm sorry, I didn't understand. But you have not raised the issue of ineffective assistance of counsel because of that? Because we had rule 402F on Friedman which says that it's not a barrier. Because the prejudicial impact, it's so devastating to a fair trial that the failure to object is not one which prevents this issue from being brought to the court. And the fact is that since the point of the devastating impact is so fundamental here, it's so important, that it isn't reasonable to say somehow that a plea discussion that starts at the police station is any less devastating in its impact than one that which happens further in the proceedings. This is the right to plead guilty or not guilty, free of the risk of a penalty, is a fundamental principle here that this 402 is intending to safeguard. The right to a fair trial is also one which it's intending to safeguard. And the state's argument that Clasper and Thompson, some of the other courts, somehow is a stronger argument for a Supreme Court rule than the case you had before the court, doesn't really hold true. Because the constitutional violation that may occur in a ZERB violation is one that the trial court may fail to fully admonish according to ZERB, but may still have other ways of coming around and addressing the issues that are raised in ZERB that in effect keep one from seating a biased jury. Whereas in this case, when you have a violation of 402F, what you have is devastating evidence that comes in that no jury can ignore. And that being the case, I mean, it's like the horse is already out of the barn, so it doesn't matter if you shut that barn door. The judge can say that he wants the jury to ignore it, but no jury is going to ignore the fact that the defendant tried to plead guilty in a case and for whatever reason it didn't work out and now he's pleading not guilty before the jury. Additionally, just because there is a violation of the voir dire questioning, doesn't necessarily mean that you will end up with a biased jury. Whereas a violation of 402F, as all the cases say, you will have a devastatingly prejudicial impact on the jury. The other thing I would ask the court to consider is that if you have a violation of 402F, under Rule 615, which protects the defendant's, whether there has not been an objection, protects his rights if the error is affecting a substantial right, certainly this is, again, such a case. And the defendant has a right to appear before a jury and be judged on the basis of the reasonable, appropriate evidence and not evidence that was presented here. And finally, your honors, there was a cross appeal and the issue I raised was the court had dismissed the attorney of record who was a retained counsel in this case because he had testified he had a motion to re-admit an allegation of an Edwards violation. And the defendant attempted multiple times to have the attorney re-admitted for trial. This was counsel of choice. It was retained counsel. And the court denied those attempts and, in fact, the defendant went to trial with a different attorney, not the defendant, in this case, going to trial. And the appellate court held that it wasn't up to, there was always a possibility of some scenario out there that would support an argument that there was an actual or a serious potential of a conflict. And in this case, the defendant had only argued at the evidence presented in this case. And in fact, if the court looks at the testimony that occurred during the trial, there really was no significant difference at all in terms of what everybody testified to. And the defendant's attorney left the police station before anything else happened on this case. So, in effect, the only thing the defendant's attorney could have testified to at trial was that he had assertion of rights, and that would never have happened under Doyle. To say that the defendant's attorney, any time that he may end up testifying in a case, or at a pretrial proceeding, is automatically excluded is simply not fair. The reviewing court can look at the record, and there really is no reasonable point that the defense counsel could have testified to. And in fact, arguably, what it means is, since the defense counsel really had nothing else to say about the case, other than his client asserted his rights, in effect, to say that, well, he might have seen something at the police station that would make it unfair for the state, that would mean that any time a defense counsel goes to a police station, even if he doesn't end up testifying in a pretrial motion, may mean that he would be excluded. This was Clancy, right? This was Clancy, yes. Right. I mean, he did, was the only one to testify on behalf of the defendant of the motion to suppress, right? That's correct. And that would not give leave for disqualification? No, not at trial, because there was nothing that he could testify to at trial. There was nothing. And to simply say, well, there might be something out there, it's not up to us to try to figure out all the possibilities, that's really not a fair assessment of what the role is for a reviewing court on this type of issue. Did Clancy have an obligation at the conclusion of the motion to suppress, when he became a witness at the motion to suppress, to disqualify himself? He had an obligation to have another attorney come in at the motion to suppress, but that is where that obligation ended. He had no obligation, and the defendant states that in its brief, he had no obligation, and in fact, he had a duty to come back and resume representation of his client. In your research, can you point to, did you find any case in which an attorney who was disqualified because he was a witness on the motion to suppress did not testify, and then was allowed back into the case to represent the defendant at the ensuing trial? Not on that particular factual situation, no, I did not. You point only to fairness. I, in fact, go through in my brief multiple cases where the courts found that there was no actual or serious potential of a conflict, but I did not find one specifically on the point of testifying on a pretrial motion. If there's nothing else, thank you, Your Honor. I'll start where counsel left off. Rule 3.7, which was in effect at the time of trial in 2008, starts out, a lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client. That's directly applicable here. It always was applicable. From the beginning of this case, the state's attorney was fully aware that the client would be at the station and would be filing a motion to suppress, kept telling the judge and telling counsel there's a conflict here. Finally, Attorney Clancy did file the motion to suppress. He's listed in every substantive paragraph of that motion to suppress. It's obvious he was going to be the witness, and in fact, he was the witness. So instead of withdrawing, as he should have done, the court was forced to disqualify him on the people's motion. The defendant in this case did not object in the appellate court, in fact, agreed that that wasn't a reasonable and proper thing for the trial court to disqualify counsel. So now we have a situation where we have a properly disqualified counsel who wants back on the case. And in answer to Justice Freeman's question, I have found no cases either where this particular scenario has arisen. There's nothing in the rule contemplating getting back onto a case. The record indicates that Mr. Goggin stood up and said, I've been on this case for quite a while. I thought I'd filed an appearance already, and he filed one that day. But he indicated that he worked in the same building or office as Mr. Clancy, and that he had been on this case for quite a while. I don't know what quite a while means, but he indicated that he was familiar with the case, and he jumped right in, and he handled the motion to suppress perfectly adequately, which indicates that he, in fact, had been on the case for a while. Can I just finish that thought, though? The argument has been made that there has really been no articulation of where the conflict would be at trial. What conflict would Clancy have at trial? Well, we have to, again, the problem with these cases is, of course, we know what happened at trial. So we have to take that out of our trial and not put in a scenario. So under U.S. v. Wheat, we have to give the trial judge a lot of deference as to what might take place. Now, we know, in fact, that the attorney was present when the defendant was in police custody, did speak with his client. And, in fact, we know, if the defendant had taken the stand and said that he was beaten or something along those lines, Mr. Clancy might be a witness. If the defendant had, the defendant tells Clancy at the station that I've made no statements to the police. He tells them, well, that wasn't true. He had made statements to the police. He hadn't made any confessions to the police, but he had made statements to the police. He made extensive statements to the police, some of which came up later on when he testified at trial. So there are things that Clancy conceivably could have talked about. And we have to give discretion to the trial judge. Again, U.S. v. Wheat's got a lot of really good language about the fact that we have to look at this prospectively as the judge looked at it. He'd already had an attorney who had just made a statement in the police station. And was there a serious potential that that could arise again at trial? Sure there was. Now, it didn't. So any lawyer who goes to the police station and consults with his client at the police station is in a conflict and cannot represent that client at trial? Because there's a potential? You risk that. In fact, that's one of the reasons when state attorneys go to the police station and talk to defendants and things like that, that they don't try the cases later. That if the state attorney is going to potentially be on that case, you don't go to the station. How many state attorneys are there in Cook County? Well, that's true, but that is one of the reasons that you do that, to avoid the conflict situation. Turning back to the first issue, the statements here were admissions. And counsel argues that they have devastating impact, these statements. Admissions very often have devastating impact. We don't determine whether something is admissible or not as to whether it has a devastating impact. Of course, this could have a devastating impact, but it's only relevant if it violated some rule or constitutional prohibition. And again, this particular rule is a policy-based rule. It's not a constitutionally-based rule. And therefore, it deserves less protection than at least, than arguably the rule involved in Glasper and Thompson had. And this Court was very much in favor of that. It was very clear that those cases did not involve structural error, and therefore, that there was no second-pronged plain error. You can't argue 615 and get in through the back door what Thompson and Glasper foreclosed through the front door. It's the same argument. You can't get there that way. The interesting thing is that counsel also argues that the defendant was dealing with the prosecutor and should have known, or had reason to know, that there was no prosecutor. It was just the police in the room. So even if the second one had been improper, which we argue it wasn't, it would be cumulative of a properly introduced first statement if that was the determining factor of the presence or non-presence of the prosecuting attorney. And I've cited in our reply brief a federal district court case that points out the history of the federal rules in this area. The federal rules changed in this area after Illinois adopted the rule because the federal rules were coming into situations like this and were not comfortable, the federal courts were not comfortable applying this rule to station house situations and, in fact, removed those station house situations from the federal rules. This Court has not done that, but I would encourage this Court to do that in this case. In short, this Court in heart cited the federal case of Levy and pointed out that the cases in which defendants offered to, to, to confess in exchange for something or, or looking for some sort of a deal, that is an admission. That is an important thing. This Court has already recognized that these types of statements are admissible as admissions and because they reflect consciousness of guilt. Because innocent people just don't all of a sudden offer to confess for no reason. And, or, and, you know, they don't offer to confess as part of a rationale. So for the reasons stated in our brief and, and arguments here today, once again, we'd ask that this Court reverse the judgment of the appellate court and remand the case back to the appellate court for resolution of those remaining issues. Thank you. Thank you, counsel. Case number 112, 467, People v. Jose Rivera will be taken under advisers agenda number five. That concludes our call of the oral argument for today, September 11th, 2012. Mr. Marshall, Illinois Supreme Court stands adjourned until tomorrow morning, September 12th, 2012, 930 a.m.